GREGORY BYRNE *v.* ISAAC HOOPER and others.

Each of the joint owners of a steamer, or other vessel, holds an undivided share, which he may dispose of without consulting the others; but neither can sell the in-terest of a co-proprietor without his consent.

Where the joint owners of a steamer employ her in carrying merchandize for freight, they become. *quoad hoc.* commercial partners, and are liable, *in solido*, to third per-sons, for all debts incurred in prosecuting the business; but the boat does not there-by cease to be the property of the joint owners. and become partnership property. The manner of employing the boat does not change the title by which it is held. It will continue to be the individual property of each of the owners.

Where a judgment has been obtained against the joint owners of a steamer, a waiver by one of the formalities required by law for the sale of the property, will not be binding on the rest.

The members of a commercial partnership have each the right to represent the firm. Service of citation on either, or admissions by either, will be binding on the rest. But where it is attempted to satisfy a judgment against the partnership out of the individual property of a member, he alone can waive the formalities required by law for its alienation. In such a case, a partner has no more authority than a stranger.

Byrne v. Hooper and others.

Joseph Kinney is appellant from a judgment of the District Court of the First District, *Buchanan*, J.

Morphy, J. On the 21st of October, 1841, a number of persons having brought suit against the steamer Robert Fulton and owners, for wages, provisions furnished and repairs, amounting to between five and six thousand dollars, Isaac Hooper, the master, and one of the owners of the boat, confessed judgments in the several suits on the same day, and writs of *fieri facias* were issued immediately on each of them. On the next day, Hooper entered into a written consent that the boat should be sold, after twelve days' advertisement, for cash. From the return of the sheriff, it appears that he seized the Robert Fulton under the several writs placed in his hands, and, under the agreement, advertised her for sale, and adjudicated her, for the sum of $5000, to Joseph Kinney, who neglected to comply with the terms of the sale, and only paid $1600 on account thereof; that on the 5th of November, 1841, he addressed a written notice to Kinney, informing him that unless he complied with the terms of the sale, the vessel would be again advertised, and sold at his risk and expense; that the vessel was accordingly a second time advertised during twelve days, and sold to F. M. Fisk for $3300. The plaintiff's counsel then moved for a rule on the sheriff to bring into court for distribution the. proceeds of the steamer, and particularly the sum of $1600 received from Kinney, whom he made a party to the rule. The latter, in answer to this motion, states in substance, that the $1600 paid by him should not be considered as liable to the judgments obtained against the boat, because he had been notified by Tucker and Hillyer, owners of two-thirds of the Robert Fulton, that the sale was illegal, and had been forbidden to pay any more on account of his bid; that in consequence of such notification and prohibition, he refused to make any further payment, upon which the sheriff again proceeded to sell the vessel, in an illegal manner, without proper notice and advertisement; that, at this second sale, F. M. Fisk became the purchaser, and has the boat now in his possession; but that in consequence of the illegalities in the two sales, Fisk has acquired no legal title. Kinney further avers that the consent under which the steamer was sold, was given by Captain Hooper alone, who was only a part

owner, and had no authority from his co-proprietors to give any such consent; that the sale was made at a time, and in a manner calculated to cause her to sell for less than her real value; and that he believes that the consent to sell was made for the purpose of defeating a privileged claim of $12,000, due to him and his partner, as vendors of the boat to Tucker, Hillyer & Hooper. He pleads, moreover, the existence of a suit brought against Fisk by Tucker & Hillyer, and to which he has been made a party, the object of which suit is to rescind the sale of the Robert Fulton. By consent of parties this suit has been cumulated with the rule taken by plaintiff, and tried with it. The petition of Tucker & Hillyer alleges that they, and Isaac Hooper, were joint owners, each of one-third, of the steamer Robert Fulton, by purchase from J. & W. Kinney, but that F. M. Fisk pretends to have a title to said steamer by virtue of a sale under execution in divers suits to which they were not parties; that Isaac Hooper, the captain of the steamer, did, wrongfully, and without authority from them, confess judgments in favor of Gregory Byrne for an amount not due by the Robert Fulton or her owners, and likewise did consent that the steamer should be sold under execution after twelve days' advertisement; that the said steamer was knocked down to G. Byrne for $8500, but that the sheriff again put up the boat for sale forthwith, when she was then sold to J. Kinney for $5000; that the said Kinney paid the sheriff $1600 on account of the purchase, but that, neglecting to pay the balance, the boat was again advertised for sale within the period required by law, and was sold to F. M. Fisk for $3300, in all which there was error, the forms of law in giving notice, and in advertising the steamboat, not having been complied with, and the sheriff having treated the bid of Gregory Byrne as a nullity; whereas, if the petitioners are bound by the sale, they allege that they have the right to insist upon the sale being made, and the sheriff, J. L. Thielen, being held responsible for the sum of $8500, as the price thereof.

The petitioners further allege that the sum of $1600 paid by Kinney, and the amount paid by F. M. Fisk, appear, by the sheriff's returns, to be in his hands, and that they fear, unless notice be given to the parties, the above amounts will be paid over to

persons having judgments against the Robert Fulton, to their prejudice. The petition concludes with a prayer that Fisk, Thielen, Hooper, and G. Byrne be cited ; that the petitioners be declared owners of two undivided thirds of said steamer ; that J. Kinney be notified not to pay to the sheriff any thing on account of his bid ; that Byrne, Hooper and Thielen be condemned to pay the petitioners $5000 for their unlawful acts in the premises, reserving petitioners' right of action against Byrne and Thielen for two-thirds of $8500, in case it be decreed that the petitioners were bound by Hooper's acts ; and, lastly, in case Fisk should not forthwith deliver up to the petitioners the steamer, that they may have judgment against him, each of them for the sum of $3000, one-third of her value, and for $300 each, per month, from the date of filing the petition until his delivery of the steamer.

A few days after this action was brought, one of the part owners, Hillyer, whose name figures as one of the plaintiffs, entered a formal disclaimer, declaring that he had never questioned the legality of Hooper's acts and confessions of judgments in the suits brought against the boat, or in the consent given for the sale ; but that, on the contrary, he approved of all those acts, and had never authorized any suit to be brought in his name to have such sale annulled.

F. M. Fisk pleaded the general issue, averring that he has expended in good faith, and for necessary repairs, in order to enable the boat to navigate the river, $1500, for which sum he prays judgment, should the court be of opinion that his title to the boat is not good. On these pleadings, the parties went to trial below ; whereupon, the court rendered the rule taken in this suit absolute, and gave judgment in favor of the defendants in their suit against Fisk and others.

The only question in this case is, whether Hooper, the captain, and part owner of the Robert Fulton, had authority to give the consent, under which the boat was sold after twelve days' advertisement, instead of the thirty days required by art. 670 of the Code of Practice. This authority is claimed and sought to be justified on the broad ground, that he had the right to sell the entirety of the boat, without the consent of his co-proprietors. The argument is, that by article 2796 of the Civil Code, the own-

ers of a vessel, if they employ her in carrying passengers or personal property for hire, are to be considered as commercial partners; that it is well settled that one commercial partner has the absolute *jus disponendi* of the personal effects or property of the partnership; and that, therefore, Hooper could have sold the boat; that if he had this right, he surely had that of making a contract or agreement as to the manner in, and the time at which the boat should be advertised and sold, when under seizure for debts due by the partnership. This reasoning would be unanswerable, if the fact which it assumes were true, to wit, that the Robert Fulton was partnership property. There existed no partnership between Tucker, Hillyer and Hooper, at the time when they purchased the boat, nor is there any evidence that they put the property of the boat into the partnership when they agreed to run her on their joint account. By the act of sale, they were joint and equal purchasers; each became the owner of one undivided third of the boat; each might have disposed of his own share without consulting the others, but no one of them had the right to sell the separate interest of his co-proprietors without their consent. Such is the well settled law applicable to part owners of vessels. Abbott on Shipping, 68, *et seq.* Story on Partnership, 585. 3 Kent, 154. By running the boat for freight and hire, have these persons ceased to be part owners, or, in other words, has the boat become the property of a commercial firm? By art. 2796 of the Civil Code it is provided, that an association for the purpose of carrying personal property for hire in ships and other vessels, is a commercial partnership. Hence we have held, that where two or more owners of a boat employ her in carrying goods on freight, they become commercial partners *quoad hoc*, and, as such, are liable *in solido* to third persons for all debts incurred in the prosecution of the business of the firm. This co-partnership is implied by law, not from the joint purchase or ownership of a boat, but from the act and undertaking of carrying personal property for hire. We do not believe that the use the owners made of this boat changed the title they had to it previously. It continued to be the individual property of each of the partners, although it was made the means or instrument by which they carried on their trade; and neither of them had the right to sell the

entire vessel without the consent of the others. But it is urged that the consent of Hooper to waive a part of the time during which the law required the property to be advertised, should only be considered as an incidental step taken in a judicial proceeding, the whole control and management of which was in his hands; that if he had the legal right to defend the suit, and even to confess judgment, without the consent of his co-partners, he had the right to enter into an agreement as to the manner in which the property should be advertised. This appears to us a *non sequitur*. The members of a commercial firm have each the right to represent the firm, and the service of a citation on one partner is binding on all; nor has it been questioned, to our knowledge, that in a commercial co-partnership admissions by one partner are binding on the others; but where a judgment against the partnership is sought to be satisfied out of the individual property of a partner, he alone can waive the formality required by law for its alienation. A partner, in such a case, has no more authority than an absolute stranger. We regret that we are constrained to come to the conclusion that the sheriff's sales to Kinney and Fisk were illegal and void, for want of the advertisement required by law. From the number and amount of the debts admitted, or proved to be due by the boat, it is improbable that Tucker will derive any advantage from his success in this suit, while it is certain that great delay and expense will be the consequence of a re-sale; but with these considerations we have, perhaps, nothing to do, when parties, misapprehending their true interests, call upon us to decide strictly on their legal rights.

As to the sum of $1600 paid by Kinney to the sheriff, it must be returned to him. He could not be compelled to take a part interest, when he had bid for the whole vessel. The sale to him being null, the consideration for which this money was paid has entirely failed.

It is, therefore, ordered and decreed, that the judgment of the District Court be avoided and reversed; that the adjudication of the steamer Robert Fulton to F. M. Fisk be set aside, and declared null and avoid; that the boat be returned to the hands of the sheriff who had her under seizure, on his returning to the purchaser the sum of $3300 by him paid, reserving to the latter his

claim, if any he has, for repairs made to the boat. And it is further ordered, that the sheriff do reimburse and pay over to J. Kinney the sum of sixteen hundred dollars, paid by him on account of his bid at the first exposure of the property for sale. The costs to be paid by the appellees in both courts.

*Elmore* and *W. W. King*, for the appellant, *Larue* for the plaintiff, and *Elwyn*, *Peyton*, *I. W. Smith*, and *Roselius*, for different appellees.